```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                           MIAMI DIVISION
                       CASE NO. 15-CR-20339-DPG
 3

 4    UNITED STATES OF AMERICA,              Miami, Florida

 5              Plaintiff,                   July 16, 2021

 6    vs.                                    9:30 a.m. to 9:46 a.m.

 7    MATTHEW PISONI, MARCUS PRADEL,         Pages 1 to 13
      VICTOR RAMIREZ,
 8
                Defendants.
 9    _____

10
                       STATUS CONFERENCE HEARING
11                        VIA VIDEOCONFERENCE
                  BEFORE THE HONORABLE DARRIN P. GAYLES
12                   UNITED STATES DISTRICT JUDGE

13
      APPEARANCES:
14

15    FOR THE GOVERNMENT:      EDWARD STAMM, ESQ.
                               EDUARDO I. SANCHEZ, ESQ.
16                             ASSISTANT UNITED STATES ATTORNEYS
                               99 Northeast Fourth Street
17                             Miami, Florida 33132

18
      FOR MATTHEW PISONI:      DAVID MARKUS, ESQ.
19                             MARKUS/MOSS PLLC
                               40 N.W. 3rd Street
20                             Penthouse One
                               Miami, Florida 33128
21

22    FOR MARCUS PRADEL:       DAVID MARKUS, ESQ.
                               Standing in for:
23                             MARC D. SEITLES, ESQ.
                               SEITLES & LITWIN
24                             40 N.W. 3rd Street
                               Penthouse One
25                             Miami, Florida 33128
```

```
 1    FOR VICTOR RAMIREZ:       RICHARD C. KLUGH, ESQ.
                                40 N.W. 3rd Street
 2                              Penthouse One
                                Miami, Florida 33128
 3

 4    STENOGRAPHICALLY REPORTED BY:

 5                              PATRICIA DIAZ, FCRR, RPR, FPR
                                Official Court Reporter
 6                              United States District Court
                                400 North Miami Avenue
 7                              11th Floor
                                Miami, Florida 33128
 8                              (305) 523-5178

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Call to the order of the Court.)

2          THE COURT:  All right.  Good morning, everyone.

3          All right.  If you will call the case.

4          COURTROOM DEPUTY:  Good morning, Judge.

5          Calling case number 15-20339-Criminal, United States of

6   America versus Pisoni, et al.

7          Counsel, please state your appearances, starting with

8   the Government.

9          MR. STAMM:  Good morning, Your Honor.  Edward Stamm,

10  Assistant United States Attorney, for the United States.

11         MR. SANCHEZ:  Good morning, Your Honor.  Ed Sanchez for

12  the United States.

13         MR. MARKUS:  Good morning, Your Honor.  This is David

14  Markus.  I represent Matt Pisoni, and I'm standing in for Marc

15  Seitles, who represents Marcus Pradel.

16         MR. KLUGH:  Good morning, Your Honor.  Richard Klugh

17  for Victor Ramirez.

18         THE COURT: All right.  Good morning, and I note the

19  presence of the defendants as well.

20         I set this down for the hearing because I am working on

21  the written order and it's just a product of having a lot of

22  other work to do, while understanding that this case has been

23  pending for a while, but I have reached a decision, so I wanted

24  to inform the parties in advance.

25         Just to cut to the chase, I'm going to order a new

1    trial.  For that reason, I want to make sure the parties are

2    aware, address any bond issues that perhaps I should in

3    anticipation of a new trial, and because my trial docket is

4    fast filling up, to give the parties an opportunity to discuss

5    when the trial should take place.

6            You know, there is really no dispute that on at least

7    one occasion the Government knowingly permitted a cooperating

8    defendant to invade the defense strategy meetings between their

9    attorneys, with them and their attorneys, and it's -- I don't

10   really think there is any doubt that the prosecution's decision

11   to allow him to do that was improper in that it was material.

12           Of course, that decision has led to several motions,

13   including this one, and an internal government investigation.

14           The Government's conduct was the subject of an earlier

15   pretrial motion to dismiss the indictment, which I denied, but

16   I denied that motion largely because the Government already had

17   much of the information at issue, as detailed in the original

18   indictment.

19           At the hearing, I relied in great part on the testimony

20   of the agents and the statements from the AUSAs assigned to the

21   case, and at the time I didn't believe that the agents'

22   testimony and the arguments from the AUSAs were false or

23   intentionally misleading.  But, you know, I concluded that the

24   Government sent Mr. Leon into at least one meeting despite the

25   joint defense agreement and that they instructed him not to

1  divulge to them any of the information learned in the defense
2  strategy meeting.  And I also found that Mr. Leon disclosed the
3  information that he learned in several meetings anyway in an
4  effort to secure a lower sentence by attempting to provide
5  substantial assistance.
6          At that time, there was no basis for me to find that
7  federal agents and Assistant United States Attorneys would
8  deliberately attempt to mislead this Court.  Rather, I thought
9  the prosecution team was reckless for sending Mr. Leon, a
10 cooperating witness, into a defense strategy meeting, and I
11 thought they were simply naive for believing that Mr. Leon
12 would not share the information that he learned with the
13 Government.
14         It was very clear, going back and looking at the
15 transcript from that hearing, I really put the blame largely on
16 Mr. Leon, right.  I thought the Government, as I said, was
17 reckless and naive but that Mr. Leon took it upon himself to do
18 a lot of things to curry favor with the Government.  But now I
19 know a whole lot more than that.
20         Based on the OPR investigation, including the testimony
21 of Mr. Leon and his attorney, former AUSA Levitt, the
22 prosecution team deliberately misled this Court about material
23 matters concerning their investigation and prosecution,
24 including the fact that the Government received from Mr. Leon
25 written notes and a timeline prepared by Mr. Pradel and that

1    Mr. Leon received specific authorization from agents and AUSA
2    Davidson to attend multiple defense meetings.
3             You know, while the Government notes that that issue is
4    disputed, if this Court is forced to make a credibility
5    finding, I do find that under these circumstances and that
6    additional testimony under oath pursuant to the -- the
7    additional testimony pursuant to the OPR investigation, I do
8    find the testimony regarding that issue from Mr. Leon and his
9    attorney, which in some ways is corroborated by the agents and
10   Mr. Levitt, now credible.
11            So in sum, the Government knowingly invaded the defense
12   camp, which is improper.  They did it on several occasions,
13   thus receiving confidential information, and the Government, at
14   least partially, relied on it.  And it's very difficult to
15   unpack what specific information was relied on in these
16   circumstances.  I don't think anyone can do that under these
17   circumstances.
18            But the most egregious thing is, the Government lied to
19   the Court about it.  In particular, as I stated before, the
20   Government lied to the Court about whether Mr. Leon attended
21   more than one meeting, whether the meetings were done with the
22   knowledge and approval of the agents and the AUSAs, and whether
23   they received the written notes and the timeline from Mr. Leon.
24            The way this information was ultimately disclosed is
25   problematic.  Mr. Levitt only disclosed having that document

1    after trial.  He -- you know, if it was misplaced or allegedly
2    he forgot about it, whatever the issue was, he waited until
3    after trial to disclose that.  Even if he had some -- if he was
4    unsure during that initial hearing before me, that should have
5    been disclosed and it was not.
6           And other truthful testimony was not voluntarily
7    disclosed.  It took an OPR investigation and, quite frankly,
8    the fine lawyers that are now representing the Government to
9    provide that information to the Court.
10          You know, the primary issues concerning the Jernigan
11   factors, I know the Government is arguing that these were
12   not -- this is not new evidence, that this could have been
13   disclosed or discovered through calling Mr. Leon and his
14   attorney as witnesses at the pretrial hearings, and perhaps
15   that would have assisted the Court in its determination of
16   whether or not a dismissal of the indictment was warranted or
17   at least requiring a new prosecution team, but you know, in
18   this case there is no way the defense could have truly known
19   the extent of the misconduct here without the testimony of the
20   AUSA's representing the Government, Mr. Davidson and
21   Mr. Levitt, and compelling their testimony at that pretrial
22   hearing was very unlikely under those circumstances.
23          So, I find that it is newly discovered evidence.
24          Even apart from that, the Government -- the
25   Government's lawyers, just like the lawyers for the defense,

1   they all have an affirmative obligation of candor to the Court

2   and in this case by those former attorneys assigned to the

3   case, there was no candor.  So, you know, considering

4   everything -- and also, the materiality of the failure to

5   disclose, you know, in this case the defendants were each

6   charged with several counts, I believe nine or ten counts, I

7   think one had one fewer counts.

8          The jury in this case, after a long trial, acquitted

9   the defendants of every single one of the substantive counts

10  and only convicted them of the conspiracy count, and that's an

11  important factor.  So, while I have previously concluded that

12  much of the evidence presented at trial was known to the

13  Government before Mr. Leon began cooperating, that fact does

14  not excuse willful deception to the Court by the agents and the

15  AUSAs, which had a direct bearing on this Court's rulings

16  before and during trial.  And given the jury's verdict

17  acquitting the defendants of all the substantive counts, it's

18  impossible to say that this misconduct did not affect the

19  jury's verdict on the conspiracy count.

20         So I am going to order a new trial.  I am going to deny

21  the defense request to dismiss the case outright.  I think a

22  new trial is required here to uphold the integrity of these

23  proceedings and also to protect the defendants' constitutional

24  rights.  Therefore, we will have a new trial with a new

25  prosecution team, which is partially moot because one of the

1    AUSAs is no longer in the office.
2            I am not going to prohibit the agents that worked on
3    the case from testifying but they will be subject to
4    cross-examination regarding any false testimony or omissions
5    that they previously had in testimony to this Court.
6            I will follow up, again, with a written order, but I'm
7    going to direct the parties to confer and within ten days
8    provide a new proposed trial date to the Court.
9            Anything else -- well, why don't I first take up, I
10   think the defendants are all just on a bond.  I don't think any
11   of them are on home detention.  I know there were some
12   restrictions, of course, about traveling outside the district.
13           Mr. Markus.
14           MR. MARKUS:  Judge --
15           THE COURT STENOGRAPHER:  I'm sorry, it was a little cut
16   up.  Can you start again?
17           MR. MARKUS:  I'm sorry.  Can you hear me, Patty?
18           THE COURT STENOGRAPHER:  Yes.
19           MR. MARKUS:  Your Honor, I believe we are fine with the
20   bond conditions as is and continue the current bond.  I will
21   check with the clients and file something if we need to, but if
22   it's okay with the Government we are continuing on the current
23   bond.
24           MR. STAMM:  We have no objection to that, Your Honor.
25           THE COURT:  All right.  Is there anything from the

1    Government, Mr. Stamm or Mr. Sanchez?

2            MR. SANCHEZ:  Yes, Your Honor.  I just wanted to say

3    that I think based on what your ruling is, it may take us more

4    than ten days to do that.  And I only say that because if the

5    issue is exposure to this material and a new trial team is

6    required, the office will need to assign a team that has not

7    reviewed any of these materials because we, obviously, had to

8    review the materials.  And there may be something that needs to

9    be done along the same lines with the law enforcement agencies

10   in terms of who is assigned as agents.

11           I guess, ultimately, it will be depending on what your

12   final order says.  In addition to that, this is a matter that

13   our office will need to send up to Washington to evaluate for

14   appellate purposes.  We cannot make that decision.  That is a

15   decision that we must submit and get decided by the Solicitor

16   General's Office, so those things do have to take place as

17   well.

18           THE COURT:  Okay.  How much time are you suggesting, I

19   guess?

20           Would you prefer that I have a status conference within

21   a certain period of time, in a larger time frame?

22           How do you suggest I proceed regarding that issue?

23           MR. SANCHEZ:  I think perhaps that might be better

24   because I really don't know what -- I don't think we know what

25   our office will do in terms of assignment and different things

1   on that right now.  So that is really part of what's going on,
2   and I honestly do not know what the timetable now is in terms
3   of our office and the Solicitor General's Office.
4           THE COURT:  Obviously, the Government can do whatever
5   it wants to do, but I recall having a discussion earlier in
6   this case.  I mean, it's been pending for a long time with the
7   attorneys and, as I recall, I could be mistaken that these
8   kinds of cases are not handled -- are not normally handled
9   criminally; they have been handled civilly, and perhaps that
10  should some -- I mean, you and Mr. Stamm were not a part of
11  that conversation.
12          If that's the case, I mean, I think that's certainly
13  something for the Government to consider as well.
14          I believe the FTC has gone after people involved in
15  these kinds of schemes and they weren't criminal prosecutions
16  but, obviously, that is something that should be considered as
17  well.
18          Is there anything else from the defense, Mr. Klugh or
19  Mr. Markus?
20          MR. MARKUS:  No, Your Honor.
21          MR. KLUGH:  No, Your Honor.
22          THE COURT:  All right.  Why don't we set this down for
23  a telephone status conference on August -- Wednesday, August
24  18th at 10 a.m.  Does that sound okay for everyone?
25          MR. SANCHEZ:  Your Honor, if we can do it -- I believe

1    that I'm going to be moving, helping my daughter move on that

2    date.  I may no longer be involved at that time, but that is a

3    potential conflict for me.

4              THE COURT:  Okay.  Is it that week or that day in

5    particular?

6              MR. SANCHEZ:  I think that is the day that we are

7    supposed to get back into town.

8              THE COURT:  Okay.  Let's see here.

9              MR. MARKUS:  Maybe the following Wednesday, the 25th,

10   Your Honor.

11             THE COURT:  We can set it for the -- I'm sorry, I am

12   moving my calendar around -- Wednesday, the 25th.  Actually,

13   why don't we set it at 10:30 because I have other cases set at

14   10:00.

15             So, Wednesday, August 25th at 10:30.

16             MR. MARKUS:  Thank you, Your Honor.

17             THE COURT:  All right.

18             MR. SANCHEZ:  Thank you very much, Your Honor.

19             THE COURT:  All right.  We will be in recess.

20             Thank you.

21             (Proceedings were concluded at 9:46 a.m.)

22

23

24

25

```
 1                   C E R T I F I C A T E
 2
 3
             I hereby certify that the foregoing is an
 4
    accurate transcription of the proceedings in the
 5
    above-entitled matter.
 6
 7
             Please note:  This hearing occurred during the
 8
    COVID-19 pandemic and is therefore subject to the
 9
    technological limitations of reporting remotely.
10
11
12
13
14
    July 16, 2021          /s/Patricia Diaz_____
15  DATE                   PATRICIA DIAZ, FCRR, RPR, FPR
                           Official Court Reporter
16                         United States District Court
                           400 North Miami Avenue, 11th Floor
17                         Miami, Florida 33128
                           (305) 523-5178
18
19
20
21
22
23
24
25
```